UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANK GALLO,<br><br>              Plaintiff,<br><br>v.<br><br>PROTECTIVE INSURANCE CORPORATION, STEVEN J. BENSINGER, STUART D. BILTON, OTTO N. FRENZEL IV, STEPHEN J. GRAY, JEREMY D. EDGECLIFFE-JOHNSON, LORIANN V. LOWERY-BIGGERS, DAVID W. MICHELSON, JOHN D. NICHOLS, JR., JAMES A. PORCARI III, NATHAN SHAPIRO, and ROBERT SHAPIRO,<br><br>              Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Frank Gallo ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Protective Insurance Corporation ("Protective" or the "Company") and the members of Protective's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By the action, plaintiff seeks to enjoin the vote on a proposed transaction, pursuant to which Protective will be acquired by The Progressive Corporation ("Progressive") through its subsidiary Carnation Merger Sub Inc. ("Merger Sub") (the "Proposed

Transaction").[1]

2.  On February 16, 2021, Protective and Progressive issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated February 14, 2021 (the "Merger Agreement"). Under the terms of the Merger Agreement, Protective stockholders will receive $23.30 in cash for each Protective share they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $338 million.

3.  On March 26, 2021, Protective filed a Schedule 14A Definitive Proxy (the "Proxy") with the SEC. The Proxy, which recommends that Protective stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (a) the Company's projections utilized by the special committee ("Special Committee") of the Board's financial advisor, Piper Sandler & Co. ("Piper Sandler"), in its financial analyses and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Piper Sandler; (b) the background leading to the Proposed Transaction; and (c) potential conflicts of interest faced by Company insiders and Piper Sandler. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Protective stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction.

4.  It is imperative that the material information omitted from the Proxy is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants

---

[1] Non-party Progressive is an Ohio corporation with its principal executive offices located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143. Progressive's common stock trades on the New York Stock Exchange under the ticker symbol "PGR." Non-party Merger Sub is an Indiana corporation and an indirect, wholly owned subsidiary of Progressive.

from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Moreover, Protective's common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Protective.

10. Defendant Protective is an Indiana corporation, with its principal executive offices located at 111 Congressional Boulevard, Carmel, Indiana 46032.  Protective serves as the publicly-traded holding company for several property-casualty insurance subsidiaries including Protective

Insurance Company, Sagamore Insurance Company and Protective Specialty Insurance Company. Protective's shares trade on the Nasdaq Global Select Market under the ticker symbol "PTVCA."

11. Defendant Steven J. Bensinger ("Bensinger") has been a director of the Company since 2018.

12. Defendant Stuart D. Bilton ("Bilton") has been a director of the Company since 1987.

13. Defendant Otto N. Frenzel IV ("Frenzel") has been a director of the Company since 2017.

14. Defendant Stephen J. Gray ("Gray") has been a director of the Company since 2019.

15. Defendant Jeremy D. Edgecliffe-Johnson ("Edgecliffe-Johnson") has been President, Chief Executive Officer ("CEO"), and a director of the Company since May 2019.

16. Defendant Loriann V. Lowery-Biggers ("Lowery-Biggers") has been a director of the Company since 2017.

17. Defendant David W. Michelson ("Michelson") has been a director of the Company since 2018.

18. Defendant John D. Nichols, Jr. ("Nichols") has been Chairman of the Board since October 2018 and a director of the Company since 2017.  Defendant Nichols previously served as the Company's Interim CEO from October 2018 until May 2019.

19. Defendant James A. Porcari III ("Porcari") has been a director of the Company since 2017.

20. Defendant Nathan Shapiro ("Nathan Shapiro") has been a director of the Company since 1979.

21. Defendant Robert Shapiro ("Robert Shapiro") has been a director of the Company since 1997.

22.     Defendants identified in paragraphs 11-21 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

23.     On February 16, 2021, Protective and jointly announced, in relevant part:

MAYFIELD VILLAGE, Ohio and CARMEL, Ind., Feb. 16, 2021 -- The Progressive Corporation (NYSE: PGR) and Protective Insurance Corporation (NASDAQ: PTVCA and PTVCB) today announced that they have entered into a definitive agreement under which Progressive has agreed to acquire all of the outstanding Class A and Class B common shares of Protective for $23.30 per share in cash, for a total transaction value of approximately $338 million. The acquisition is expected to close prior to the end of the third quarter of 2021, subject to customary closing conditions, including receipt of certain required regulatory approvals and approval of Protective's Class A shareholders. Protective's Board of Directors has unanimously approved the transaction, based on the unanimous recommendation of the Special Committee of the Board. Certain Protective shareholders owning approximately 35% of Protective's outstanding Class A common stock that had previously entered into a contingent sale agreement terminated their obligations to close the transactions under that agreement and entered into a voting agreement with Protective and Progressive in support of the sale to Progressive.

"As a leader in commercial auto insurance, we're excited to expand our capabilities with the expertise Protective offers in larger fleet and affinity programs and by providing additional product lines for us to add to our portfolio," says Commercial Lines President, Karen Bailo. "Our Commercial Lines business provides one of our greatest opportunities to expand our addressable market and grow. This move allows us to add products that will help us support larger fleets and brings expertise in workers' compensation coverage for the transportation industry, which are new areas of business for us and can help us to meet the needs of our commercial customers. We look forward to working with the employees of Protective and appreciate the knowledge they bring."

"The Special Committee of the Board has been focused on what is in the best interest of Protective and its stakeholders and we are pleased to achieve that objective," said John D. Nichols, Jr., Chair of the Special Committee of Protective's Board. "This transaction aligns well with the direction of Protective, provides stability and opportunity for growth and will deliver a significant, immediate cash premium to Protective's shareholders—all of which the Special Committee and the Board believe creates the ideal outcome for Protective. The Board would also like to recognize the Shapiro family for its over 40-year stewardship of Protective."

"We are excited to announce this agreement with Progressive, which is a milestone in Protective's history," said Jeremy Johnson, Protective's Chief Executive Officer. "With Progressive's scale and resources, we expect to deliver greater value to our policyholders, while continuing to provide the exceptional service they have come to expect from us. Progressive shares our commitment to excellence in serving customers, and we are confident they are the ideal owner for Protective. Together, we will be able to deliver innovative offerings and superior customer service to even more customers across the country."

Mr. Johnson continued, "This transaction is truly a testament to the hard work and dedication of our talented team. By combining with Progressive, we expect Protective and its employees will have greater opportunities to grow as part of a larger and more diversified organization."

**Transaction Details**

Upon the completion of the transaction, Protective shareholders will receive $23.30 per share in cash from Progressive. Progressive will fund the purchase through liquid investments on hand. The per share price represents a 49.1% premium and 63.2% premium, respectively, to Protective's unaffected 30-day volume-weighted average Class A and Class B share prices as measured on February 12, 2021.

Progressive plans to maintain Protective's offices in Carmel, Indiana and retain Protective's employees.

**The Proxy Contains Material Misstatements or Omissions**

24. Through the Proxy, defendants are attempting to persuade the Company's stockholder to vote in favor of the Proposed Transaction. The Proxy that defendants filed, however, is materially incomplete and misleading. The Proxy that defendants disseminated to the Company's stockholders fails to provide critical information that is necessary for the those individuals and entities to make an informed voting decision in connection with the Proposed Transaction.

25. Specifically, as set forth below, the Proxy fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (a) the Company's projections utilized by the Special Committee's financial advisor, Piper Sandler, in its financial analyses and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Piper Sandler; (b) the background leading to the Proposed

Transaction; and (c) potential conflicts of interest faced by Company insiders and Piper Sandler. Accordingly, Protective stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning the Company's Financial Projections and Piper Sandler's Financial Analyses*

26.  The Proxy omits material information regarding the Company's financial projections., including projected book value per share and operating earnings per share for the projection period, provided by Company management and utilized by Piper Sandler in connection with its *Net Present Value Analysis.*

27.  The Proxy describes Piper Sandler's fairness opinion and the various valuation analyses performed in support of its opinion. The Proxy, however, omits material information concerning Piper Sandler's financial analyses. Indeed, the description of Piper Sandler's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Protective's public stockholders are unable to fully understand these analyses. In turn, they are precluded from properly assessing what weight, if any, to place on Piper Sandler's fairness opinion in determining whether to vote to approve the Proposed Transaction.

28.  Specifically, the Proxy fails to disclose the individual multiples and financial metrics for each of the selected companies and transactions analyzed by Piper Sandler, respectively, in its *Comparable Company* and *M&A Transactions Involving Publicly Traded P&C Insurance Companies* analyses.

29.  With respect to Piper Sandler's *Net Present Value Analysis*, the Proxy fails to disclose: (a) Protective's book value per share and operating earnings per share utilized in the

analysis; (b) quantification of Protective's terminal values; and (c) quantification of the inputs and assumptions underlying the discount rates ranging from 10.0% to 12.0%.

30. Without such undisclosed information, Protective stockholders cannot evaluate for themselves whether the financial analyses performed by Piper Sandler were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Piper Sandler's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

31. The omission of this material information renders the statements in the "Certain Company Prospective Financial Information" and "Opinion of the Company's Financial Advisor" sections of the Proxy false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning the Background of the Proposed Transaction*

32. The Proxy fails to disclose material information concerning the background of the Proposed Transaction, including whether any of the confidentiality agreements entered into with prospective acquirors during the sale process, include "don't-ask, don't-waive" ("DADW") standstill provisions that are still in effect and presently precluding any potential counterparty from submitting a topping bid for Protective.

33. The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a confidentiality agreement could make a superior proposal for Protective. If the potential acquirer's confidentiality agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (a) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a

waiver, either directly or indirectly; or by (b) being released from the agreement, which if action has been done, is omitted from the Proxy.

34. Any reasonable Protective stockholder would deem the fact that a likely topping bidder may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

35. The Proxy further fails to disclose the identities of the "independent board members" appointed to the Special Committee following its establishment at the April 24, 2020 Board meeting.

36. The omission of this information renders the statements in the "Background of the Merger" section of the Proxy false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' and Piper Sandler' Potential Conflicts of Interest***

37. The Proxy fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

38. For example, according to the February 16, 2021 joint press release announcing the Proposed Transaction, "Progressive plans to maintain Protective's offices in Carmel, Indiana and retain its employees."  Yet, the Proxy fails to disclose whether any members of Protective management have secured employment with the combined company, as well as the details of any employment and retention-related discussions and negotiations that occurred between Progressive and Protective's executive officers, including who participated in all such communications, when they occurred and their content.  The Proxy further fails to disclose whether any of Progressive's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction.

39. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Protective's stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

40. The Proxy also fails to disclose material information concerning the potential conflicts of interest faced by Piper Sandler.

41. The Proxy sets forth, "Piper Sandler has not received or become entitled to receive any fees in respect of investment banking engagements by the Company or its subsidiaries during the two years preceding the delivery of its fairness opinion." Proxy at 41. The Proxy fails, however, to disclose details of any compensation Piper Sandler has received in connection with any services provided to Progressive in the previous two years, and the related services provided.

42. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

43. The omission of this material information renders the statements in the "Background of the Merger," "Interests of Certain Persons in the Merger," and "Opinion of the Company's Financial Advisor" sections of the Proxy false and/or materially misleading in contravention of the Exchange Act.

44. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Protective will be unable to

make an informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

45. Plaintiff repeats all previous allegations as if set forth in full.

46. During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

47. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy. The Proxy was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections, the inputs and assumptions underlying Piper Sandler's financial analyses, the background of the Proposed Transaction, and Company insiders' and Piper Sandler's potential conflicts of interest. The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

48. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

49. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

50. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

51. Plaintiff repeats all previous allegations as if set forth in full.

52. The Individual Defendants acted as controlling persons of Protective within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Protective, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

55. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Protective stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in its favor on behalf of Protective, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Protective stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 20, 2021                                    **WEISSLAW LLP**

                                                         By _____
                                                            Richard A. Acocelli
                                                            1500 Broadway, 16th Floor
**OF COUNSEL:**                                             New York, New York 10036
                                                            Tel: (212) 682-3025
**LONG LAW, LLC**                                           Fax: (212) 682-3010
Brian D. Long                                               Email: racocelli@weisslawllp.com
3828 Kennett Pike, Suite 208
Wilmington, DE 19807                                     *Attorneys for Plaintiff*
Tel: (302) 729-9100
Email: bdlong@longlawde.com